**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5605-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ADRIAN JARRETT,

     Defendant-Appellant.

_____

        Submitted January 15, 2019 – Decided May 8, 2019

        Before Judges Rothstadt and Gilson.

        On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 95-09-0303.

        Joseph E. Krakora, Public Defender, attorney for appellant (Suzannah Brown, Designated Counsel, on the brief).

        Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Susan L. Berkow, Special Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

In an earlier unpublished opinion, we vacated a trial court's denial of defendant Adrian Jarrett's petition for post-conviction relief (PCR) after an evidentiary hearing and remanded for a new hearing. See State v. Jarrett, No. A-4044-12 (App. Div. June 16, 2015) (slip op. at 16). After conducting a second hearing in accordance with our remand, the PCR court[1] again denied defendant's petition for PCR and defendant appealed. We now affirm.

As discussed in our earlier opinion, defendant, "a Jamaican citizen and a legal permanent resident of the United States, pleaded guilty [in 1993] to one count of distribution of a controlled dangerous substance, N.J.S.A. 2C:35-5(b)(3)." Id. at 2. In accordance with his plea agreement, the court sentenced him to probation.[2]

In his PCR petition, defendant claimed that plea counsel failed to properly advise him about the deportation consequences of his plea. Id. at 3. After conducting an evidentiary hearing, the first PCR court concluded that defendant satisfied the first prong under Strickland v. Washington, 466 U.S. 668, 687, 694

---

[1] A different judge presided at the second hearing.

[2] Defendant later pled guilty to a new offense and a corresponding violation of probation that led him to be sentenced to four years in prison.

A-5605-16T4

(1984), "because counsel twice circled 'N/A' as to question seventeen on the plea forms,"[3] when he should have known from "presentence reports . . . that defendant was a Jamaican citizen." Id. at 4-5. However, as we described, the PCR court concluded that defendant did not prove prejudice under Strickland's second prong because defendant "was concerned about the sentence he would be exposed to in the event that he went to trial and was convicted. . . . He was not concerned with the probability or the possibility of deportation." Id. at 12. After his first evidentiary hearing, defendant was deported to Jamaica. Id. at 5. Nevertheless, defendant appealed the denial of PCR.

In response to defendant's appeal, we disagreed with the first PCR court's determination because we concluded that its "factual finding that defendant was not concerned about his immigration status [was] not supported by the record . . . ." Id. at 13. Quoting from the United States Supreme Court's opinion in Padilla v. Kentucky, 559 U.S. 356 (2010), "we vacate[d] the order denying defendant's petition for [PCR] and remand[ed] the case to the trial court for an evidentiary hearing to determine if defendant can 'convince the court that a

---

[3] Question seventeen asked: "Do you understand that if you are not a United States citizen or national, you may be deported by virtue of your plea of guilty?"

3

decision to reject the plea bargain would have been rational under the circumstances.'" Id. at 16 (quoting Padilla, 559 U.S. at 372).

Judge Lorraine Pullen presided over the remand hearing at which defendant was the only witness. Defendant, who was approximately thirty-two-years-old at the time, testified that up until his deportation, he had lived in the United States since he was about eleven-years-old and resided with his parents and siblings. Defendant stated that he viewed the United States as his and his family's home. According to defendant, he only travelled to Jamaica once when he was twelve-years-old. Although he had family members who lived there, defendant had virtually no communications with them.

Addressing his 1993 offense, when he was eighteen-years-old, defendant stated that he was innocent of the charge. Further, if his plea counsel had properly advised him about being deported as a result of his plea, he would not have pled guilty and instead would have risked going to trial and being sentenced to prison.

After considering the record and defendant's testimony, Judge Pullen denied defendant's petition. She set forth her findings and explained the reasons for denying the petition a second time in a fourteen-page written decision that accompanied her June 30, 2017 order. Citing to our opinion in State v. Maldon,

442 N.J. Super. 475, 486 (App. Div. 2011) and the United States Supreme Court's opinion in Hill v. Lockhart, 474 U.S. 52, 59 (1985), the judge observed that in order for defendant to prove that he suffered any prejudice under Strickland's second prong, he had to

> establish[] by a preponderance of the evidence that it would have been reasonable not to take the [p]lea and instead go to trial, and that he would have done so. . . . [which] turn[ed] on whether the outcome of the proceeding would have likely been more favorable than the terms of the plea deal.

The judge then found that defendant's plea was "voluntary, knowing and intelligent" and turned to the issue of prejudice. In her determination of whether defendant was prejudiced by counsel's misinformation, the judge compared the facts of this case to those in State v. McQuaid, 147 N.J. 464 (1997), and concluded they were similar. As she explained, in McQuaid, a defendant's PCR petition was rejected because he could not establish a "manifest injustice" where he pled guilty to a crime for which he was facing life in prison with a sixty-year period of parole ineligibility, but only was sentenced under his plea to forty years with a thirty-year parole disqualifier. Judge Pullen compared those facts to defendant's circumstances and stated the following about the strength of the evidence against defendant and the benefit he received from his plea agreement:

Much like the defendant in McQuaid, Petitioner here also obtained significant benefits from his plea bargain. Like McQuaid, the State's evidence against Petitioner was substantial, and would have included statements from officers from the [county] Narcotics Task force who observed Petitioner selling cocaine, the seized cocaine, and Petitioner's voluntary statement to police that he was selling cocaine. Further like McQuaid, Petitioner's potential exposure for a conviction of two counts of possession of cocaine with intent to distribute and one count of possession of cocaine have resulted in harsher penal exposure than what was provided per the terms of the plea. Thus, despite the attorney's misinformation, the 1993 case resolved in Petitioner's favor as he received a substantial benefit as a result of his plea bargain.

In further support of her determination that under the circumstances it would not have been reasonable for defendant to have rejected his plea offer, the judge concluded that there was no evidence that a "manifest injustice" would occur if defendant's plea was not vacated. She considered the evidence adduced at the remand hearing and applied it to the factors delineated in State v. Slater, 198 N.J. 145, 157-58 (2009), finding no basis to vacate defendant's plea. Judge Pullen specifically observed that defendant made no "colorable claim of innocence" at the hearing other than an unsupported "bare assertion" that he was innocent. She found that his testimony about his innocence was not credible in light of the record. The record established that after his arrest, defendant

admitted to police that he committed the charged offense and there was no dispute that he provided a factual basis in support of his plea while under oath.

Addressing the strength of defendant's reason for wanting to withdraw his plea, the judge found defendant incredible in his assertions that he would have rejected the plea offer had he known he could be deported, especially in light of the weight of the evidence against him that exposed him to a "high" chance of incarceration as compared to the probation he received under the plea agreement. The court also found that the plea agreement was "mutually beneficial" to defendant and the State and that the State would be greatly prejudiced by vacating the plea and going to trial based upon the extreme age of the case. This appeal followed.

On appeal, defendant argues the following:

POINT I

THE LOWER COURT ERRED IN DENYING [DEFENDANT'S] PETITION FOR [PCR].

In support of his argument, defendant explains that Judge Pullen's findings "were so contrary to the evidence in the record that appellate intervention is necessitated." He claims that she again concluded that defendant was only "concerned with penal consequences" and not with the possibility of deportation and its impact on him and his family. He also contends that the judge went

7

beyond the scope of our remand because she analyzed his petition under <u>Slater</u> in determining whether the enforcement of his plea was a "manifest injustice."

Our Supreme Court has established the standard of our review in PCR cases where the PCR court held an evidentiary hearing:

> In reviewing a PCR court's factual findings based on live testimony, an appellate court applies a deferential standard; it "will uphold the PCR court's findings that are supported by sufficient credible evidence in the record." Indeed, "[a]n appellate court's reading of a cold record is a pale substitute for a trial judge's assessment of the credibility of a witness he has observed firsthand." However, a "PCR court's interpretation of the law" is afforded no deference, and is "reviewed de novo." "[F]or mixed questions of law and fact, [an appellate court] give[s] deference . . . to the supported factual findings of the trial court, but review[s] de novo the lower court's application of any legal rules to such factual findings."
>
> [<u>State v. Pierre</u>, 223 N.J. 560, 576-77 (2015) (first, second, fourth, and fifth alterations in original) (citations omitted).]

Applying that standard, we conclude that defendant's argument is without merit. We affirm substantially for the reason expressed by Judge Pullen in her comprehensive written decision. We add only the following comments.

In <u>Lee v. United States</u>, 137 S. Ct. 1958 (2017) the Supreme Court stated that in considering a claim of prejudice under <u>Strickland</u>'s second prong, "[c]ourts should not upset a plea solely because of post hoc assertions from a

defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Lee, 137 S. Ct. at 1967. The Court also explained that

> common sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea. . . . When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive.
>
> [Id. at 1966 (citation omitted).]

The evidence presented by defendant at the remand hearing failed to satisfy his burden by establishing that he was confronted at the time with "similarly dire" consequences. At the hearing, other than defendant's bald assertions, there was no evidence of any defenses that defendant could have raised in 1993 to the facts that led to his arrest and charge. Moreover, the potential consequences of taking a chance at trial were "markedly harsher" than entering the plea. Id. at 1969. Without evidence of a viable defense, defendant faced a prison sentence of at least five years with a mandatory period of parole ineligibility as compared to the plea offer's recommendation for non-custodial probation. The record demonstrated that it would not have been rational for

defendant to reject the State's very favorable plea offer, proceed to trial, and run the risk of serving several years in prison.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5605-16T4